**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 11-74-DLB**

**LISA BLEVINS**                                                                          **PLAINTIFF**


**vs.**                        **MEMORANDUM OPINION AND ORDER**


**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                **DEFENDANT**

\* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record and the parties' dispositive motions, **reverses and remands** the Commissioner's decision for further clarification.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Lisa A. Blevins filed an application for supplemental security income (SSI) benefits on May 22, 2006.  (Tr. 162-68).  At the time of filing, Plaintiff was 38 years old and alleged a disability onset date of May 16, 2002.  (Tr. 162).  Plaintiff asserts that she is disabled due to her "[m]anic depression, anxiety, split personality, [and] migraines."  (Tr. 199).  Plaintiff's claim was denied initially on August 3, 2006 (Tr. 106), and upon reconsideration on December 5, 2006 (Tr. 107).  At Plaintiff's request, an administrative hearing was conducted on August 18, 2008, by Administrative Law Judge ("ALJ") Ronald M. Kayser.  (Tr. 63-94, 134-35).  On December 30, 2008, the ALJ determined that Plaintiff

1

was not disabled and therefore not entitled to SSI payments.  (Tr. 49-62).  This decision

became the final decision of the Commissioner when the Appeals Council denied Plaintiff's

request for review on February 18, 2011.  (Tr. 1-6).

Plaintiff's May 22, 2006 application is her second for SSI benefits.  Plaintiff received

a prior fully favorable decision from an Administrative Law Judge on August 4, 2004 due

to bipolar disorder, with a disability onset date of May 16, 2002.  (Tr. 97-105).  However,

Plaintiff's benefits ceased in May 2005 due to her incarceration.  (Tr. 110-13).  Upon her

release in May 2006, Plaintiff filed a new application for benefits.

After ALJ Kayser's unfavorable decision relative to her second application for

benefits, Plaintiff filed the instant action on April 19, 2011.  (Doc. # 1).  The matter has

culminated in cross-motions for summary judgment (Docs. # 9, 10), which are now ripe for

adjudication.

## II.   DISCUSSION

**Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether

it is supported by substantial evidence and was made pursuant to proper legal standards.

*See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007).  "Substantial evidence" is

defined as "more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make

credibility determinations.  *Id.*  Rather, we are to affirm the Commissioner's decision,

provided it is supported by substantial evidence, even if we might have decided the case differently.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side.  *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988).  Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion.  *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers whether the claimant still performs substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether a significant number of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity."  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### a.    The ALJ's Determination

In this case, ALJ Kayser considered the time period from May 22, 2006, the filing date of the claimant's current application, through the date of his unfavorable decision.  (Tr. 52).  At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 22, 2006, the date on which the application was filed.  (Tr. 54).  At Step 2, the ALJ found that Plaintiff had the following severe impairments: bi-polar disorder and

3

polysubstance abuse (tetrahydrocannabinol). (*Id.*). At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 55); *see* 20 C.F.R. §§ 416.925 and 416.926.

At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform a full range of work at all exertional levels, with some moderate limitations due to her mental impairments. (Tr. 57). In light of these impairments, Plaintiff would have "moderate limitations in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, to interact appropriately with the general public, and respond appropriately to changes in the work setting." (*Id.*). However, the ALJ found that Plaintiff "retains the basic mental demands of unskilled work to include the ability to understand, carry out, and remember simple instructions; make adjustments commensurate with the functions of unskilled work; respond appropriately to supervisors, co-workers, and work situations; and to deal with changes in a routine work setting." (*Id.*). The ALJ found that Plaintiff would work best in a low stress, repetitive, non-production quota position that is not in direct contact with the general public. (*Id.*). Based upon these findings, ALJ Kayser found that Plaintiff is able to perform her past relevant work as a short order cook. (Tr. 60).

Although the ALJ found that Plaintiff is capable of performing her past relevant work in Step 4, he continued to provide alternative findings for Step 5 of the sequential evaluation process. (Tr. 61). At Step 5, the ALJ found that Plaintiff was born on August 27, 1967 and that she was 38 years old, which is defined as a "younger person," on the date the application was filed. (Tr. 61); *see* 20 C.F.R. § 416.963. The ALJ also found that

4

Plaintiff has at least a high school education and is able to communicate in English.  (Tr. 61); *see* 20 C.F.R. § 416.964.  Considering the Plaintiff's age, education, work experience and residual functional capacity, the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. 61).  ALJ Kayser therefore concluded that Plaintiff has not been under a disability within the meaning of the Social Security Act since the date Plaintiff filed the current application for disability on May 22, 2006 through the date of the decision.  (Tr. 62).

    **b.**    **Analysis**

    Plaintiff advances four arguments on appeal.  First, Plaintiff contends that the ALJ should have considered the previous favorable decision.  Second, Plaintiff argues that the ALJ improperly assessed her severe impairments.  Third, Plaintiff asserts that the ALJ failed to consider the record as a whole.  Finally, Plaintiff contends that the ALJ improperly assessed her daily living activities.  Finding that remand is warranted on Plaintiff's first objection, the Court need not address the remaining arguments at this time.

    **In Accordance with *Drummond*, the ALJ Was Bound by the Findings in the Prior ALJ Decision Absent New and Material Evidence of a Change in Plaintiff's Condition**

    Plaintiff argues that the ALJ should have considered the prior fully favorable disability determination in his assessment.  In support, Plaintiff asserts that the principles of res judicata apply and that all three requisite elements exist here: (1) a previous determination or decision has been made under the same subpart and with respect to the same party; 2) the previous determination or decision was based on the same facts and issues; and 3) the previous determination or decision has become final by administrative

or judicial action.  (Doc. # 9 at 6) (citing 20 C.F.R. §§ 404.957(c)(1) and 416.1457(c)(1)).

Plaintiff contends that substantial evidence does not exist in the record to demonstrate that her condition improved since the prior ruling, and thus ALJ Kayser was bound by the findings made by the prior ALJ.  (Doc. # 9 at 7).  This argument is well taken insofar as the ALJ was required, upon Plaintiff's second application for benefits, to consider whether newly introduced evidence demonstrates an improvement in her condition since the previous disability determination.

The Sixth Circuit Court of Appeals established in *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997) "that the principles of res judicata can be applied against the Commissioner."  *Id.* at 842.  Accordingly, "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances."  *Id.*  Furthermore, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."  *Drummond*, 126 F.3d at 842 (citing *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987)); *see also Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598 (6th Cir. 1990) (per curiam) (holding that a second ALJ was precluded from reconsidering whether plaintiff could perform his past relevant work).  In *Drummond*, the Sixth Circuit held, through the application of res judicata, that the Commissioner was bound by its prior determination that the claimant had the residual functional capacity to perform sedentary work because "substantial evidence was not introduced that [claimant's] condition improved significantly between the two hearing dates."  *Id.* at 843.  Thus, considering the claimant's age at the time of her second application and limitation to sedentary work, the Sixth Circuit found her eligible for benefits.  *Id.*

6

In light of the holding in *Drummond*, the Commissioner issued an Acquiescence Ruling directing states within the Sixth Circuit to follow *Drummond* by applying res judicata to a prior assessment of a claimant's residual functional capacity as well as other findings required in the sequential evaluation process for determining disability.   This Ruling explained:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSAR 98-4(6), 63 Fed. Reg. 29771-01 (June 1, 1998).[1]  The Sixth Circuit held that "[t]he burden is on the Commissioner to prove changed circumstances and therefore escape the principles of res judicata."  *Drummond*, 126 F.3d at 843.

Here, Plaintiff asserts that administrative res judicata required ALJ Kayser to accept the 2004 finding of ALJ Gerard that she met the requirements of Listing 12.04 because there was no substantial evidence of an improvement in her condition.  (Doc. # 9 at 6-7). The Commissioner, however, contends that the *Drummond* rule is inapplicable to the ALJ's 2004 findings because her benefits were subsequently terminated due to her extended incarceration.  In May 2005, upon the first full month of incarceration, Plaintiff's SSI benefits

---

[1]  This ruling recognizes that the holding in *Drummond* differs from Social Security Administration ("SSA") policy.  Although SSA policy permits application of administrative res judicata, "if the subsequent claim involves deciding whether the claimant is disabled during a period that was not adjudicated in the final determination or decision on the prior claim, SSA considers the issue of disability with respect to the unadjudicated period to be a new issue that prevents the application of administrative res judicata."  SSAR 98-4(6), 63 Fed. Reg. 29771-01 (June 1, 1998).  Addressing how the *Drummond* decision will be applied, the SSA clarified that the holding of that decision is limited in its application to cases involving claimants who reside within the Sixth Circuit.

were suspended.  (Tr. 110-13); 20 C.F.R. § 416.1325.  The Social Security Act excludes

from SSI eligibility "anyone who is an 'inmate of a public institution.'"  *Schweiker v. Wilson*,

450 U.S. 221, 224 (1981) (quoting 42 U.S.C. § 1382(e)(1)(A)).  Thus, residents of public

institutions may not receive SSI benefits.  20 C.F.R. § 416.211.  Suspended benefits,

however, are resumed "effective with the earliest day of the month in which a recipient is

no longer a resident of a public institution."  20 C.F.R. § 416.1325.

Regardless of the reason for suspension, an individual's benefits are terminated

"following 12 consecutive months of benefit suspension."  20 C.F.R. § 416.1335.  In the

present case, Plaintiff's SSI benefits did not automatically resume following her release

because her incarceration lasted approximately thirteen months.  *See id.*  Once a

claimant's benefits are terminated, as opposed to merely suspended, she must submit a

new application for benefits.  *See Program Operations Manual System*, SI 02310.093(A)(1)

and SI 02301.205(C) (manual setting forth policy and procedure regarding when benefits

may be reinstated and when a new application is required, such as after a termination).

However, the fact that Plaintiff's SSI benefits were not entitled to automatic resumption and

therefore required a new application, does not necessarily mean that ALJ Kayser was free

to disregard the findings made in conjunction with the prior decision absent a change in

Plaintiff's condition.[2]

---

[2]  The Commissioner cites *Messer v. Astrue*, No. 09-342-DLB, 2010 WL 4791956 (E.D. Ky. Nov. 18, 2010) for the proposition that "a claimant's benefits are not entitled to an automatic resumption of benefits after such benefits are terminated due to incarceration."  (Doc. # 10 at 6) (citing *Messer*, at *3-4).  The fact that a claimant is not entitled to an automatic resumption after the termination of benefits is not in dispute.  However, to further assert that such termination necessarily precludes the application of res judicata goes beyond the holding of *Messer*.  Whether the *Drummond* rule applies after the termination of benefits due to incarceration was not answered in *Messer* and was inapplicable to the facts presented therein.  In *Messer*, there was an intermediate disability determination, issued post-incarceration, to which the decision under review was bound by res judicata to follow.  *Messer*, at *5.

In contrast, in *Hamblin v. Apfel*, 7 F. App'x 449 (6th Cir. 2001) (unpublished), the Sixth Circuit articulated a specific subset of cases where benefits have been terminated to which the *Drummond* rule is not

In the 2004 fully favorable decision, ALJ David A. Gerard found that Plaintiff's bipolar disorder met the requirements of Listing 12.04 because the criteria of both paragraphs A and B were satisfied.[3]  (Tr. 103).  Explaining how this determination was reached, ALJ Gerard stated his agreement with the testifying medical expert that Plaintiff's condition resulted in "marked restriction of activities of daily living, marked difficulties in maintaining social functioning, deficiencies of concentration, persistence of pace, and had had more than 3 episodes of decompensation in work or work-like situations."  (Tr. 104).  In light of Plaintiff's credible hearing testimony and the medical evidence of record, ALJ Gerard did

applicable.  The court in *Hamblin* addressed a 1996 amendment to the Social Security Act which provided that "[a]n individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." *Hamblin*, 7 F. App'x at 450 (quoting Pub. L. No. 104-121, 110 Stat. 847, § 105(b)(1) (1996)).  In light of this amendment, the Commissioner was instructed to contact all claimants who had previously been awarded benefits under that section that their benefits would terminate.  Such claimants were "given the opportunity to reapply for SSI benefits with 'a new medical determination.'" *Id.* (quoting Pub. L. No. 104-121, § 105(b)(C)).  A new medical determination was appropriate because a materially contributing factor in each affected claimant's prior disability determination was no longer permitted to be considered in assessing disability.  Furthermore, the Sixth Circuit held that a "*new*" medical determination, as directed by Congress to take place, "could not be made if earlier findings were accorded res judicata status." *Id.* at 451.  The considerations which led the Sixth Circuit to hold that res judicata was not applicable under that set of circumstances are not relevant here.  The termination of benefits in the present case was a statutory response to a twelve-consecutive-month suspension, and was not tied to Plaintiff's condition nor any factors under consideration in her initial disability assessment.

[3]  The required level of severity for 12.04 disorders is met when both paragraphs "A" and "B" criteria are satisfied, or when both paragraphs "A" and "C" criteria are satisfied.  ALJ Gerard based his determination of disability on a finding that paragraphs A and B were satisfied, however ALJ Kayser found that the record evidence failed to satisfy the requirements of paragraphs B or C.  Paragraph "B" requires at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended duration.  20 C.F.R. Part 404, Subpart P, Appendix 1, 12.04.  Paragraph "C" requires a "[m]edically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," in conjunction with one of the following:
> (1) Repeated episodes of decompensation, each of extended duration; or (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. *Id.*

not grant weight to opinions of state agency psychologists that Plaintiff had only moderate mental limitations. (*Id.*). In accordance with *Drummond* and Acquiescence Ruling 98-4(6), the findings of ALJ Gerard in his 2004 decision would be binding on a subsequent SSI claim involving an unadjudicated period absent an improvement in Plaintiff's condition.

In the decision currently under review, ALJ Kayser considered the paragraph B requirements and the relevant evidence of record, but found that Plaintiff's mental condition did not meet the criteria of Listing 12.04 for the unadjudicated period beginning with the date the current application was filed.[4]  The ALJ found that Plaintiff had "mild restriction" in activities of daily living, "moderate difficulties" in social functioning, "moderate difficulties" with regard to concentration, persistence or pace, and that Plaintiff had experienced no episodes of decompensation during the period of time in question. (Tr. 56-57).  ALJ Kayser based these findings on, *inter alia*, Plaintiff's testimony at the August 18, 2008 hearing, the July 2006 report of consultative examiner Dr. Robert Noelker, Ph.D. (Tr. 280-83), and the August 2006 and November 2006 assessments by Dr. Ed Stodola, Ph.D. (Tr. 284-97, 298-301) and Dr. Jan Jacobson, Ph.D. (Tr. 389-402, 403-06), respectively.  The Commissioner highlights specific portions of this new evidence that the ALJ considered in reaching his findings on each of the section B requirements under Listing 12.04.   Specifically, the Commissioner notes:

- with respect to activities of daily living, Plaintiff's August 2008 testimony that she performs household chores and likes to keep busy, and the July 2006 report from Dr. Noelker that she was able to perform basic household tasks;
- with respect to social functioning, Plaintiff's August 2008 testimony that she hosts a church meeting at her house once a week, her testimony

---

[4]  ALJ Kayser also found that the record evidence failed to establish the presence of paragraph C criteria.  (Tr. 57).

that she has a boyfriend that she sees once a week, and Dr. Noelker's report that her social interactions were mildly to moderately impaired;

- with respect to concentration, persistence, and pace, the ALJ's observation that Plaintiff maintained attention and concentration during the hearing and Dr. Noelker's report that Plaintiff's ability to understand and remember simple one or two-step instructions was mildly to moderately impaired; and
- with respect to episodes of decompensation, the absence of evidence of any episodes of decompensation.

(Doc. # 10 at 7-8) (citing Tr. 56-57, 80-82, 282-83).

It is undisputed that considerable evidence has been introduced into the record since the prior ALJ decision in 2004.  However, it is not abundantly clear from a review of ALJ Kayser's decision whether he considered this new evidence to demonstrate that Plaintiff's condition has improved since the previous finding that she met Listing 12.04, as required under *Drummond*, or whether he performed the sequential evaluation anew.  It is not enough that the ALJ relies on new evidence that post-dates the earlier decision to arrive at his determination; the holding of *Drummond* requires that such new evidence demonstrate "an *improvement* in a claimant's condition."  *Drummond*, 126 F.3d at 842 (emphasis added).  In an unpublished case regarding a cessation of benefits issue, the Sixth Circuit held that "[b]ecause this is a case which requires a showing of changed circumstances, a comparison between circumstances existing at the time of the prior decision and circumstances existing at the time of the review is necessary."  *Kennedy v. Astrue*, 247 F. App'x 761, 768 (6th Cir. 2007) (unpublished) (internal citations omitted).  The same reasoning is applicable here.

In the decision denying benefits, there is no mention of *Drummond* and, furthermore, the language of the decision does not suggest that principles of administrative res judicata were considered.  Although the ALJ "considered the complete medical history consistent

11

with 20 CFR 416.912(d)" and based his determination primarily upon the new evidence, there is no indication that he considered the new evidence in light of that previously considered in rendering the 2004 decision or that any comparison was made. *Cf. Castrovinci v. Astrue*, No. , 2012 WL 928736, at *6-7 (N.D. Ohio Mar. 19, 2012) (affirming an ALJ's decision where *Drummond* was not explicitly referred to, but the language of the decision indicated that consideration was given to the prior ALJ's decision and RFC in addition to medical evidence post-dating the prior decision in evaluating the claimant's impairments).

The Court is mindful of the substantial deference with which conclusions of the Commissioner are reviewed, and that there may be sufficient evidence in the record to demonstrate an improvement in Plaintiff's condition. Upon consideration of the evidence introduced since Plaintiff's application filing date, the ALJ has issued a thorough decision explaining his findings at each step of the sequential evaluation leading to his ultimate conclusion that Plaintiff was not disabled as of her most recent filing date. However, with no reference to *Drummond*, or specific comparison to the evidence considered by the prior ALJ in reaching his findings, it cannot simply be assumed that in the course of his assessment ALJ Kayser found that Plaintiff's condition had indeed *improved*. The Court will not speculate as to the exact nature of the analysis conducted by the ALJ and any unstated findings, but rather will remand the action to provide the opportunity to specifically address his findings in light of the instruction of *Drummond* and Acquiescence Ruling 98-4(6). *See Haddix v. Astrue*, No. 10-30-ART, 2010 WL 4683766 (E.D. Ky. Nov. 12, 2010) (remanding for clarification as to which of three possible analytic paths were taken by the ALJ in reaching his determination). Plaintiff has advanced several additional arguments

12

on appeal, however the Court will reserve judgment on Plaintiff's remaining objections pending clarification of the ALJ's analysis.

### III.  CONCLUSION

For the reasons stated herein, the Court concludes that this case must be remanded so that the ALJ may provide further clarification as to whether the Commissioner has met his burden to demonstrate sufficient improvement of Plaintiff's condition as set forth in *Drummond* and thereby avoid application of the principles of administrative res judicata. Accordingly,

**IT IS ORDERED** as follows:

1. Plaintiff's Motion for Summary Judgment (Doc. # 9) is hereby **granted in part** as to Plaintiff's request for a reversal of the Commissioner's decision, and **denied in part** as to her request for a court ordered award of benefits;

2. Defendant's motion for summary judgment (Doc. # 10) is hereby **denied**;

3. The administrative decision of the Commissioner is hereby **REVERSED** and **REMANDED** for further clarification consistent with this opinion; and

4. A separate Judgment reversing and remanding this matter will be entered contemporaneously herewith.

This 31st day of July 2012.



Signed By:

*David L. Bunning*   DB

**United States District Judge**

G:\DATA\SocialSecurity\MOOs\Covington\2-11-74 Blevins MOO.wpd